[No. H035523. Sixth Dist. May 26, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JON HOLMBERG, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 4. entitled "Conduct Credits Pursuant to Section 4019."

## Counsel

Elisa A. Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Christina vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GROVER, J.**[*]—Defendant Jon Holmberg, Jr., was convicted by plea of one count of concealing stolen property (Pen. Code, § 496, subd. (a))[1] and one count of using an altered, stolen or counterfeit access card (§§ 484g, subd. (a), 487). The court sentenced defendant to the middle term of two years concurrent on both counts. Finding defendant's custody credits to be 489 actual days and 244 conduct credits for a total of 733 days, the court deemed the sentence served. The court ordered defendant to pay various fines and fees, plus $18,182 in victim restitution.

On appeal, defendant argues the victim restitution award was improper because the victims' damages were due to the burglary of the victims' premises and were not proximately caused by his conduct. He also contends there was insufficient evidence to support $367 of the restitution award. Finally, he argues he is entitled to additional presentence conduct credits because the 2009 amendments to section 4019 apply retroactively to his case. We conclude that one $20 item on the restitution award is not supported by substantial evidence and strike that portion of the award. As so modified, we will affirm the judgment.

## 1. Facts

*Stonecrest Financial Burglary*

On May 26, 2008, there was a burglary at Stonecrest Financial (Stonecrest) in San Jose. Stonecrest is a "collection of companies" that includes a

---

[*] Judge of the Monterey Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Penal Code.

mortgage lender, a private placement alternative investment company, and property acquisition and property management companies. Several items were stolen during the burglary, including four computers, three monitors, three USB backup drives, two Ethernet cables, software, a card scanner, $175 in cash, two credit cards, and "miscellaneous items" valued at $227.11. Five Stonecrest computers were also damaged during the burglary.

Later that day, one of the stolen credit cards was used at a Taco Bell restaurant and at a 7-Eleven store. The following day, the same credit card was used at two Target stores in San Jose. Defendant and his girlfriend, Amanda Henderson, appear on surveillance videos of the transactions at Target. On May 29, 2008, the other stolen credit card was used to pay defendant's sister's cellular phone bill.

About one month after the burglary, someone logged on to the Internet using one of the stolen Stonecrest computers. Software in that computer caused it to log on to Stonecrest's network. Security personnel examined the computer's hard drive remotely and found Henderson's resume.

*Chinese Medicine and Acupuncture Healing Center Burglary*

The Chinese Medicine and Acupuncture Healing Center (CMAHC) in Cupertino was burglarized over the Memorial Day weekend in 2008. The center's computer and other items were stolen.

*Precision Auto Care Burglary*

Precision Auto Care (PAC) in Santa Clara was burglarized on an unspecified date. Ali Bayatoni, the manager of PAC, reported that two Dell computer workstations and miscellaneous tools were stolen.

*Police Investigation*

On July 17, 2008, the San Jose Police Department executed a search warrant at defendant's home and found hard drives, a card scanner, and software that were stolen from Stonecrest.[2] They also found hard drives from

---

[2] According to the probation report, the property in defendant's possession included computers, hard drives, CPU chips, memory chips, monitors, backup drives, a coffeemaker, CD's (compact discs), and credit cards.

computers that were stolen from PAC and CMAHC. Henderson admitted that she and defendant used the credit cards stolen in the Stonecrest burglary at Taco Bell, 7-Eleven, and Target. She told police that on the same day they used the credit cards, several computers and monitors showed up at the house she shared with defendant. Henderson told police that defendant brought the computers home, replaced the hard drives or wiped the hard drives clean, and sold them on craigslist.

The police interviewed defendant on July 24, 2008. Defendant admitted using the stolen credit card at Target and possessing the stolen computers. He said a friend brought three or four computers to his house on Memorial Day weekend. Both defendant and Henderson denied participating in the burglaries and told police that Mark Collins "probably" committed the burglaries.

## 2. PROCEDURAL HISTORY

*Charges, Plea, and Sentencing*

In July 2009, the prosecution charged defendant with one count of concealing stolen property (§ 496, subd. (a)) on or about July 18, 2008, and one count of using an altered, stolen or counterfeit access card (§§ 484g, subd. (a), 487) between May 26 and May 27, 2008. Defendant was arrested for those offenses on August 31, 2009. The record suggests he was in jail for another offense at that time.

In October 2009, defendant pleaded no contest to both counts in this case in exchange for a two-year stipulated sentence. The plea agreement provided that, with the exception of nine days, credits were to accrue as of July 24, 2008.

Prior to sentencing, the probation department prepared a "Waived Referral" memorandum for the court, in which the probation officer addressed contacts with the victims. CMAHC did not respond to the probation officer's inquiries. Bayatoni, the manager of PAC, told the probation officer that his business had been burglarized and that numerous items were stolen, including three computers, one laptop computer, shop equipment, and tools. Bayatoni estimated his losses "in excess of $9,000." The probation officer reported that a hard drive from PAC was found in defendant's possession. According to Joan Verduzco, an employee of Stonecrest, "defendant stole parts from all of their computers, including computer disks and other equipment." She reported that "defendant 'basically shut down our business for about one week' while computer equipment needed to be replaced and employees needed to work overtime and on weekends to assess the damage, recover information, and bring work production up to date."

In November 2009, Jon Freeman, the owner of Stonecrest, sent the probation department a statement of loss form estimating Stonecrest's losses at $27,269.12. Attached to the form was an itemized list of the property that was stolen or damaged in the burglary. Freeman's list identified each item by manufacturer name and model number, estimated the item's value and replacement cost, and stated whether the item had been damaged or stolen. Stonecrest's claim included $5,000 for "damaged" computers, $3,795 for IT labor, and $10,000 for loss of business and productivity for one week.

At the sentencing hearing in November 2009, defense counsel objected to the probation department's report on restitution and requested a restitution hearing. The court sentenced defendant to two years in prison and, based on the number of custody credits, deemed the sentence served. The court set the matter for further hearing on victim restitution.

*Restitution Hearing*

The prosecutor filed papers with the court in which he stated that restitution in a possession of stolen property (§ 496) case must be related to the withholding or sale of the stolen property, rather than the burglary or initial theft. He argued there was evidence that defendant possessed several computers on the same day they were stolen from Stonecrest and that the court should order restitution for the missing computers and lost productivity because Stonecrest would not have experienced those losses if defendant had returned the computers when he first acquired them and had not withheld the property. The prosecutor urged the court to award Stonecrest $18,072 of the amount claimed and to use its "best judgment" regarding the remaining items ($3,795 for the IT labor; $5,000 for damage to computers that were not stolen; $175 in cash; and $227.11 for miscellaneous), as well as the $9,000 claimed by PAC.

The evidence included a facsimile transmission from Verduzco of Stonecrest, in which she stated, "Due to the theft of our computers[,] all of our daily operations were reduced to the most basic levels. Many employees brought their laptops[,] which enabled some work to get done[.] [B]ut all company information stored on our servers was not accessible. Replacement computers took about a week to be delivered and several more days for our IT company to reconfigure our network, back up our data and get all the individuals['] work stations properly set up."

The evidence included excerpts from the police report describing the items seized from defendant's home. Among the items were 13 hard drives. San Jose Police Officer Gunsky examined the data on the hard drives and determined that six of the hard drives belonged to Stonecrest, one belonged to

PAC, and one belonged to CMAHC. Officer Gunsky explained that "[e]ach hard drive was connected to the computer using a hardware write blocking device; this prevented the original hard drive from being changed in any way." He was not able to determine the owners of the other five drives.

The officer determined that six of the hard drives belonged to Stonecrest because they contained files that referred to One82, a company that provided technical support to Stonecrest, and contained Kaseya software, which One82 used to monitor Stonecrest's computers remotely. Five of the six hard drives with the One82 file references had files referring to Stonecrest, Freeman, or Verduzco.

Officer Gunsky concluded that one of the hard drives belonged to CMAHC because it contained letterhead, documents and spreadsheets with CMAHC's name on them and the Medisoft software CMAHC had installed on its computer. He concluded that one of the hard drives belonged to PAC because it contained documents, timesheets, and payroll records for PAC, as well as the softWrench software that had been installed on PAC's computer.

Defendant filed points and authorities in which he argued that the court should not order victim restitution because his conduct (receiving stolen property) was not a proximate cause of the victims' losses, in part because the state of mind for burglary is different from that of receiving stolen property. He argued he had no duty to return the property. He observed that the original burglary report claimed the loss of five computers and four hard drives, but when the police searched his home two months after the burglaries, they found hard drives and no computers. He argued that although the police found a connection to the victims' businesses on some of the hard drives, the hard drives were not marked in a distinctive way and had been "wiped" of any identifying data. Defendant asserted there was no evidence that suggested he knew who the owners were or where to return "any potential stolen items." Defendant admitted that he possessed stolen property and that he knew the property was stolen when he possessed it.

In their written submissions, both parties discussed *People v. Scroggins* (1987) 191 Cal.App.3d 502 [236 Cal.Rptr. 569] (*Scroggins*). At the hearing, the court advised the parties that based on *Scroggins* and *People v. Vournazos* (1988) 198 Cal.App.3d 948 [244 Cal.Rptr. 82], it had concluded there was a sufficient nexus to connect defendant with the lost property to warrant restitution. Defense counsel asked for additional time to review and respond to *Vournazos*, and the court continued the hearing. With regard to PAC's restitution claim, the prosecutor noted that the police found only one PAC hard drive in defendant's home and argued that the $9,000 claimed by PAC

was too speculative for one hard drive. The prosecutor therefore recommended that the court "not order restitution for the theft" and "only order restitution for losses associated with withholding and not returning the property."

In supplemental points and authorities, the prosecutor argued that defendant was responsible for "losses resulting from Defendant's concealment, withholding or sale of [the] victim's property." The prosecutor explained how each of the items on Stonecrest's list related to defendant's offense and argued that Stonecrest was entitled to restitution for all of the items on its list, except $5,000 for the damaged computers, $175 in cash, $227.11 for miscellaneous, and $3,795 for the IT labor, which it presumably incurred "to repair damaged computers and restore the network." Regarding PAC's claim, the prosecutor argued that although PAC claimed the loss of three computers, a laptop, shop equipment, and mechanic's tools, the police only found one hard drive at defendant's home and that it would be reasonable to order restitution for that hard drive.

The court adopted the prosecution's analysis and ordered defendant to pay $18,072 in victim restitution to Stonecrest. The court ordered restitution to PAC for the hard drive that was recovered by police. Although PAC did not provide a value for the hard drive, the prosecution argued that it was similar to a hard drive Stonecrest had lost and suggested using Stonecrest's replacement cost estimate of $110. The court agreed and awarded PAC $110.

### 3. Restitution

Defendant contends that the restitution order in this case is not causally related to his crime of possessing stolen property. He argues that the "substantial factor" test developed in tort law applies to victim restitution awards and that his conduct was not a substantial factor in causing the victims' losses because their losses were due to the burglary or theft and would have occurred without his conduct. He attacks the entire restitution award and specifically challenges the $10,000 awarded to Stonecrest for one week's loss of use. Defendant also argues there was insufficient evidence to support the award of $367 to Stonecrest for the card scanner and the computer cables, since there was no evidence that those items were ever in defendant's possession.

#### A. *General Principles Governing Victim Restitution*

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights. . . . Proposition 8 established the right of crime victims to receive restitution directly 'from the persons convicted of the

crimes for losses they suffer.' " (*People v. Giordano* (2007) 42 Cal.4th 644, 652 [68 Cal.Rptr.3d 51, 170 P.3d 623] (*Giordano*).) Proposition 8 added new article I, section 28 to the California Constitution, which at the time of the offense in this case provided: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Cal. Const., former art. I, § 28, subd. (b).)[3]

■ "California Constitution, article I, section 28, subdivision (b), which is not self-executing, directed the Legislature to adopt implementing legislation." (*Giordano, supra,* 42 Cal.4th at p. 652.) To that end, the Legislature enacted section 1202.4. Under that code section, the court must order direct victim restitution in "every case in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f); see also § 1202.4, subd. (a)(1).) The court "shall require" the defendant to make restitution "based on the amount of loss claimed by the victim . . . or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (§ 1202.4, subd. (f).)

Section 1202.4, subdivision (f)(3) provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." Subdivision (f)(3) identifies 11 categories of economic losses that are recoverable by victims, including losses to property. Economic loss for the purposes of victim restitution includes: (1) "[f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible"; and (2) "[w]ages or profits lost due to injury incurred by the victim . . . ." (§ 1202.4, subd. (f)(3)(A), (D).)

■ A defendant is entitled to a hearing to "dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1).) A restitution hearing is usually held at the time of sentencing. The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt. (*People v.*

---

[3] California Constitution former article I, section 28 was amended by initiative measure (Prop. 9) on November 4, 2008. Former subdivision (b) was designated as subdivision (b)(13) and the text of the subdivision was amended.

*Gemelli* (2008) 161 Cal.App.4th 1539, 1542 [74 Cal.Rptr.3d 901] (*Gemelli*); *People v. Baker* (2005) 126 Cal.App.4th 463, 469 [23 Cal.Rptr.3d 871].)

"Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property." (*Gemelli, supra*, 161 Cal.App.4th at p. 1543, citing *People v. Foster* (1993) 14 Cal.App.4th 939, 946 [18 Cal.Rptr.2d 1] (*Foster*), superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238–245 [87 Cal.Rptr.2d 205, 980 P.2d 912]; but see *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 [101 Cal.Rptr.2d 135] [probation officer's report "may satisfy notice requirements for due process [citation], but it cannot take the place of evidence"].) " 'This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.] When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount.' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [29 Cal.Rptr.3d 120], quoting *Foster*, at p. 947.)

### B. *Standard of Review*

Generally speaking, restitution awards are vested in the trial court's discretion and will be disturbed on appeal only when the appellant has shown an abuse of discretion. (*People v. Fortune* (2005) 129 Cal.App.4th 790, 794 [28 Cal.Rptr.3d 872].) " '[E]ven though the trial court has broad discretion in making a restitution award, that discretion is not unlimited. While it is not required to make an order in keeping with the exact amount of loss, the trial court must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498 [118 Cal.Rptr.2d 511].) " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*Id.* at p. 499.)

### C. *Causation*

Defendant argues that the restitution award was improper because the victims' damages were not proximately caused by his conduct. We disagree.

 As noted previously, section 1202.4, subdivision (f)(3) provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined

economic loss incurred *as the result of the defendant's criminal conduct* . . . ." (Italics added.) Interpreting the requirement that the damages result from the defendant's criminal conduct, the court in *People v. Jones* (2010) 187 Cal.App.4th 418, 424–427 [114 Cal.Rptr.3d 8] (*Jones*) held that tort principles of causation apply to victim restitution claims in criminal cases. The court observed that there "are two aspects of causation . . . : cause in fact (also called direct or actual causation), and proximate cause." (*Id.* at p. 424.) The court explained that " '[a]n act is a cause in fact if it is a necessary antecedent of an event' " and that " 'proximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." ' " (*Id.* at p. 425.)

For example, the victim in *Jones* sought restitution for damage to her camper caused by a motor vehicle accident with the defendant for which he pleaded no contest to driving under the influence of alcohol. She also sought restitution for damage to her car bumper that occurred in the parking lot of the courthouse when she appeared at one of the hearings in the defendant's case. The court explained that the first accident involving the camper was a cause *in fact* of the later damage to the victim's bumper because, but for the initial accident with the defendant, she would not have been trying to park at the courthouse on the day her bumper was damaged. (*Jones, supra,* 187 Cal.App.4th at p. 425.) The defendant in *Jones* also challenged whether there was "a *proximate* causal connection between his criminal conduct and the damage to the bumper," arguing that "despite the direct causal connection between his criminal conduct" and the damage to the bumper, his conduct was not the proximate cause of the damage because some intervening cause, i.e., the victim's negligent driving, should relieve him of liability. (*Id.* at pp. 425, 427.) Since the court remanded the case for other reasons, it directed the trial court to determine whether the defendant's conduct was a proximate cause of the damage to the bumper for purposes of restitution. (*Id.* at p. 427.)

" 'The first element of legal cause is *cause in fact* . . . . The "but for" rule has traditionally been applied to determine cause in fact. . . . [¶] The Restatement formula uses the term *substantial factor* "to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause." ' " (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1095 [44 Cal.Rptr.3d 14], citations omitted.)

Defendant correctly notes that California courts have adopted the "substantial factor" test in analyzing proximate cause. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1050–1053 [1 Cal.Rptr.2d 913, 819 P.2d 872].) " 'The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.' [Citation.]

Thus, 'a force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor' [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault." (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79 [86 Cal.Rptr.2d 846, 980 P.2d 398].)

Defendant argues that the restitution award here was improper because his conduct was not a substantial factor in causing the victims' damages. He argues that the victims' losses would have occurred even without his act and that the damages were due to the burglaries rather than his concealing the property. Defendant's argument, however, ignores the fact that there can be more than one cause of injury and that multiple causes can combine to cause harm. (See *Doupnik v. General Motors Corp.* (1990) 225 Cal.App.3d 849, 866 [275 Cal.Rptr. 715] ["For there to be comparative fault there must be more than one contributory or concurrent legal cause of the injury for which recompense is sought."]; CACI No. 431.)

█ Although defendant denies burglarizing the victims' premises, the evidence here supports the conclusion that defendant's conduct was a concurrent cause of the victims' losses and a substantial factor in depriving them of the use of their property. There was evidence that defendant received the stolen property on the day it was stolen. Henderson admitted that she and defendant used a stolen credit card at Taco Bell and 7-Eleven on the day of the Stonecrest burglary; both defendant and Henderson admitted using the stolen credit card at Target the day after. Henderson told police that several computers and monitors showed up at their home at that time and that defendant "fixed" the computers and sold them on craigslist. By the time the police executed a search warrant almost two months after the burglaries, the monitors were gone and the computers had been altered to the point that only the hard drives were recovered. Defendant admitted he knew the property was stolen when he possessed it. He argues that since the stolen property did not have any distinctive markings, he was prevented him from returning it to its rightful owner. However, nothing prevented defendant from turning over the known stolen items to the police. For these reasons, we conclude that defendant's concealing of the stolen property was a concurrent cause in depriving the victims of the use of their property. It is significant that defendant obtained the property the day it was stolen. Had he contacted law enforcement about the items when he received them, Stonecrest would not have had to replace them or incur a one-week loss of business and productivity. Defendant's conduct played far more than a negligible or theoretical part in bringing about the victims' injuries and was a substantial factor in causing the harm they suffered.

Defendant's reliance on *Scroggins* is misplaced. The defendant in *Scroggins* lived in an apartment with his sister. Four apartments in their complex were

burglarized and several items were taken, including videocassette recorders, televisions, cameras, jewelry, telephone answering machines, purses, and a blood pressure cuff. (*Scroggins, supra,* 191 Cal.App.3d at p. 504.) The defendant's sister discovered three of the stolen items, all belonging to one victim, in her apartment and called the police. (*Ibid.*) Scroggins pleaded guilty to receiving stolen property. At sentencing, the probation department reported that the value of the "still missing property" from the other three burglaries was $2,366. (*Ibid.*) The court granted probation and ordered Scroggins to pay $2,366 in restitution as a condition of his probation. The appellate court reversed the restitution order because "Scroggins was never charged with or found to be criminally responsible for the burglaries." (*Id.* at p. 506.) Since Scroggins was convicted of receiving stolen property and the stolen items were recovered by the police and returned to the victim, the court concluded that the trial court erred in ordering restitution to the three remaining victims where there was no evidence that Scroggins was responsible for their losses. (*Ibid.*)

Unlike *Scroggins,* in this case there is ample evidence of a causal connection between the victims' losses and defendant's conduct. When the police searched defendant's home, they found property that all three victims had reported stolen. There was also evidence that defendant possessed Stonecrest's property on the very day the burglary occurred.

Defendant contends that even if he had returned the equipment right away, Stonecrest could not have resumed operation immediately because the computer equipment would have had to be examined for evidence of a crime, Stonecrest would have had to reformat its drives to avoid contamination, and the equipment "needed to be reinstalled, the network reconfigured, and the back-up drives restored from the servers." Since there was no evidence that these activities could have been completed in less than the week it took to replace the equipment, defendant argues that his conduct did not contribute to Stonecrest's loss. He also argues there was no evidence that the computer equipment was in working order when he received it or that the data was recoverable, since the burglar damaged other equipment he or she left behind.

We begin by observing that some of defendant's arguments are not supported by the evidence. At least one of Stonecrest's computers was in working order, since Henderson used it to create a resume and it was also used to log on to the Internet. The data on several computers was recoverable. That is how the police determined which hard drives belonged to which victim. We note also that defendant did not make any of these arguments at the restitution hearing below. Even without deciding whether these contentions have been forfeited, we are not persuaded. As we observed, by holding on to the equipment, knowing it was stolen, defendant's conduct was a

concurrent cause of the victims' losses and a substantial factor in causing their damages. The evidence here contains the necessary causal connection to support the restitution award.

From the beginning, the prosecutor sought victim restitution in this case based only on defendant's concealing of stolen property, and not the burglary or theft of the property. The prosecutor did not seek restitution for computers that were damaged in the Stonecrest burglary but not removed from the premises, for the repair of those computers, for the stolen cash (since there was no evidence defendant ever possessed it), or for the miscellaneous items that were never identified by the victim. The trial court agreed. Rather than awarding the full amount of Stonecrest's claim ($27,269.12), the court awarded $18,072, after determining which of Stonecrest's losses resulted from the burglary and not from defendant's concealing of the property. The court also rejected PAC's unsubstantiated request for $9,000 and ordered $110 for a single hard drive. The trial court's restitution order was carefully calculated to include only the losses attributable to defendant's conduct. Once Stonecrest presented its claim setting forth the replacement cost of the items, including $10,000 for lost business, the burden shifted to defendant to " 'come forward with contrary information to challenge that amount.' " (*People v. Keichler, supra,* 129 Cal.App.4th at p. 1048.) He did not do so.

We find no abuse of discretion in the restitution awarded here.

### D. *Sufficiency of the Evidence to Support Award of $367 for Scanner and Cables*

Defendant challenges the sufficiency of the evidence to support two items included in the restitution order: $347 for a CardScan business card scanner and $20 for two Ethernet cables.

Stonecrest reported that a "Cardscan Executive Model 700C2" card scanner with a replacement cost of $347 had been stolen. The police report indicated that the officers recovered "(2) CardScan business card scanner, Model 700C" from defendant's home. It is not clear what "(2)" in the police report means. Defendant suggests that it means that two business card scanners were recovered. However, the rest of the description is in the singular, suggesting that only one business card scanner was recovered. Regardless, Stonecrest sought restitution for one business card scanner and was only compensated for one.

On appeal defendant argues that he made no admissions with respect to these "scanners"; that no one from Stonecrest ever identified them as belonging to Stonecrest, "either by sight or by serial number"; that the model

number on the police report did not match the model number on Stonecrest's claim form; that the police found computer-related items not belonging to Stonecrest;[4] and that there was insufficient evidence to conclude one of the scanners belonged to Stonecrest. At the restitution hearing, defendant did not present any evidence that the card scanner described in the police report was not Stonecrest's card scanner. The minor differences between the descriptions of the items on the police report and Stonecrest's claim form do not persuade us that they were not the same item. For these reasons, we conclude the court did not abuse its discretion in awarding restitution for the loss of the business card scanner.

As to the Ethernet cables, Stonecrest claimed the loss of two brand new Ethernet cables worth $20. The prosecutor argued that while the police did not recover the cables, "they did recover other stolen computer-related equipment from defendant's home. Therefore, it is reasonable to believe that the person who stole the other equipment and brought it to defendant's home also brought" the cables. By the time the police searched defendant's home nearly two months after the burglaries, the three computer monitors were already gone. However, Henderson admitted that defendant had possessed the monitors. By contrast, there was no evidence that defendant ever possessed the cables. We therefore find insufficient evidence to support the $20 restitution award based on the value of the cables, and strike that portion of the award.

### 4. CONDUCT CREDITS PURSUANT TO SECTION 4019[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 5. DISPOSITION

The restitution award is modified to strike the $20 awarded to Stonecrest for the Ethernet cables, resulting in an award of $18,052 to Stonecrest. There is no change in the $110 awarded to PAC as victim restitution. As so modified, the judgment is affirmed.

The clerk of the superior court is directed to prepare an amended abstract of judgment to reflect the modification of victim restitution to Stonecrest

---

[4] The police recovered five hard drives, a thumb drive, a gift card and debit cards that were not linked to any of the identified victims.

[*] See footnote, *ante*, page 1310.

from $18,072 to $18,052. The clerk is also directed to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Premo, Acting P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 14, 2011, S194573.