Filed 11/2/15  P. v. Howell CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC AUSTIN HOWELL,<br><br>    Defendant and Appellant. | H041544<br>(Santa Clara County<br>Super. Ct. No. C1476269) |

Defendant Eric Austin Howell pleaded no contest to stalking in violation of a restraining order (Pen. Code, § 646.9, subd. (b)).[1]  The trial court suspended imposition of sentence, placed defendant on probation for three years, and ordered that he serve eight months in county jail.  Defendant contends:  there was insufficient evidence to support a restitution award of $1,900 for a lost rental deposit; and the trial court erred in awarding restitution for attorney's fees for a restraining order.  We find no error and affirm.

## I.  Statement of Facts[2]

Defendant and Nikki Howell have two children and had been divorced for two years when the proceedings were held.  After their divorce, defendant stalked, threatened

---

[1]    All further statutory references are to the Penal Code.

[2]    The underlying offenses were described in the probation report.

and harassed her. In September 2013, the court issued a no contact order protecting Nikki Howell and her boyfriend Chris Overheul. The restraining order was valid until March 5, 2014. While the restraining order was in effect, defendant contacted the victims hundreds of times via text and e-mail, showed up at their home, and vandalized Overheul's vehicle. Defendant also threatened to "pull [Overheul's] daughters['] panties off," "tak[e] out" Overheul's knees, blow up his car, and borrow his friend's gun and end the battle with Nikki Howell. Defendant reminded Nikki Howell that he was a former Marine and knew how to hurt people.

On October 19, 2013, defendant texted Nikki Howell 27 times and called her 34 times. On October 21, 2013, defendant called her and threatened to come to her place of business if she did not respond.

The police responded to the victims' home several times between September 12, 2013 and December 2, 2013. Defendant was eventually arrested in April 2014.

## II. Restitution Hearing

The prosecutor submitted copies of various documents to his brief in support of the victims' restitution request. These exhibits included: (1) a receipt for moving costs of $490; (2) a residential agreement requiring a $2,500 deposit for their new residence; (3) a declaration by Detective James Gonzalez regarding the need for relocation costs; (4) a declaration by Wendy Lun in which she stated that she charged Nikki Howell $2,968 for representation in obtaining a restraining order; and (5) a declaration by Kristin Love Boscia in which she stated that she charged Overheul and Nikki Howell $3,150 for representation in obtaining a restraining order. The probation officer attached a copy of an e-mail from Nikki Howell to a supplemental memorandum to the probation report.

The e-mail stated that Nikki Howell's losses included $1,900 for moving out of her residence earlier than permitted.

Following argument, the trial court ordered victim restitution: $490 for moving expenses, $1,900 for having to vacate the premises prior to expiration of the lease, and $6,118 in attorney's fees.


## III.  Discussion

Defendant contends that the trial court abused its discretion in awarding restitution for the victims' loss of a rental deposit of $1,900 and for attorney's fees of $6,118.


### A.  Legal Principles Governing Victim Restitution Awards

Victims of crime have a state constitutional right to restitution for losses resulting from criminal acts against them.  (Cal. Const., art. I, § 28, subd. (b)(13)(A).)  The Legislature has implemented this right through section 1202.4, which provides in relevant part:  "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."  (§ 1202.4, subd. (f).)

A defendant has the right to a restitution hearing "to dispute the determination of the amount of restitution."  (§ 1202.4, subd. (f)(1).)  "The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt."  (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319-1320, citing *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).)  A prima facie case for restitution is made by the prosecution "based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss."  (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.)  "Section 1202.4 does not, by its terms, require any particular kind of proof."  (*Gemelli*, at

3

pp. 1542-1543.) After the prosecution has made a prima facie showing of the victim's loss, "the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*Id.* at p. 1543.)

This court reviews a restitution order under the abuse of discretion standard. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) "'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' [Citations.]" (*People v. Mearns* (2002) 97 Cal.App.4th 493, 499.)

### B.  Award for a Lost Deposit

Section 1202.4, subdivision (f)(3) sets forth several categories of losses for which a victim may claim reimbursement, including "[e]xpenses incurred by an adult victim in relocating away from the defendant, including, but not limited to, deposits for utilities and telephone service, deposits for rental housing, temporary lodging and food expenses, clothing, and personal items.  Expenses incurred pursuant to this section shall be verified by law enforcement to be necessary for the personal safety of the victim . . . ." (§ 1202.4, subd. (f)(3)(I).)

Defendant argues that the victim's unverified statement is insufficient to sustain a restitution order for $1,900 for a lost rental deposit. [3]

*Gemelli*, *supra*, 161 Cal.App.4th 1539 is instructive.  In that case, the owner of a restaurant, which had been burglarized by the defendant, provided the probation officer with a list outlining the losses resulting from the defendant's conduct.  (*Id.* at p. 1541.) There were no receipts attached to the list.  (*Ibid.*)  The list explained how each of the claimed losses was related to the burglary and "an amount spent on materials, an hourly

---

[3]    Defendant points out that the victims provided receipts for their other claimed losses.  However, as the prosecutor explained, they were not given a receipt for the loss of the rental deposit.

4

rate for labor or professional services, and the amount of time it took to complete the necessary work." (*Id.* at p. 1544.) *Gemelli* held that there was sufficient evidence to constitute a prima facie showing of losses to support a restitution award. (*Ibid.*)

Similarly, here, the victim's e-mail stated that her relocation costs included $1,900 for early termination of her lease. Her statement was corroborated by documentation that she had changed residences in the middle of July. Detective Gonzalez's declaration also stated that, based on his investigation, "it was reasonably necessary for the safety of the victims, and the victims' children, that they relocate so that [defendant] could not find them and carry out the threats." Thus, the prosecutor made a prima facie case showing to support the $1,900 victim restitution award and shifted the burden to defendant to refute this amount. Since defendant failed to carry his burden, the trial court did not err when it included $1,900 in its order awarding restitution.

Defendant argues that *Gemelli* is distinguishable. He claims that the victim's statement in the present case "lacked the detail and credibility" of the statement in *Gemelli*. *Gemelli* involved several losses, including the repair of back gate fencing and boards, installation of a new latch, replacement of a metal shelf, purchase of a new security camera and monitor, replacement of a carving knife, purchase of a filing cabinet, repair of a doorjamb, and reconstruction of paperwork taken from a filing cabinet. (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1544.) Here, defendant is only challenging a single loss by the victim. However, the issue is the same in both *Gemelli* and the present case, that is, whether the victim's unverified statement was sufficient to establish a prima facie case for entitlement to restitution under section 1202.4.

Defendant also contends that the victim's e-mail is not as "credible as the list in *Gemelli* because it does not include [an] explanation for the expenses incurred, how they were related to [defendant's] conduct, or why they were necessary." This contention has no merit. In *Gemelli*, it was not readily apparent why the victim was claiming certain

5

losses. Here, Detective Gonzalez's declaration established why the victims needed to relocate as a result of defendant's criminal conduct.

Defendant argues that it was not his "burden to seek out the landlord to provide documentation to confirm the claimed loss." However, once the victim established a prima facie case that she was entitled to restitution, the burden shifted to him to disprove the claimed loss. (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1543.) Defendant failed to make any attempt to do so.

Defendant's reliance on *People v. Vournazos* (1988) 198 Cal.App.3d 948 is misplaced. In *Vournazos*, the victim listed damage to his Mercedes, loss of some personal property, and loss of wages for a total of $2,180 resulting from the defendant's theft of his vehicle. (*Id.* at p. 952.) The probation officer testified that he discussed the matter with the victim and he determined that the defendant should pay the victim $2,180 in restitution. (*Id.* at pp. 952-953.) He further testified that he had asked the victim's bookkeeper to send him documentation of the losses, but he did not receive it. (*Id.* at p. 953.) The trial court ordered restitution in the amount of $2,180. (*Ibid.*) *Vournazos* considered the relevant statutory language, which provided that when a victim seeks restitution for stolen or damaged property, "the value of such property 'shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible.' [Citations.]"[4] (*Id.* at p. 958.) *Vournazos* observed that neither the victim's statement nor the probation officer's testimony established that the victim's losses were based on the replacement cost of the property. (*Ibid.*) *Vournazos* also pointed out that there was no evidence that the amount claimed for the repair of the damage to the Mercedes was the actual cost of the repair. (*Ibid.*) Thus, *Vournazos* concluded that since the victim had failed to state a prima facie case, the burden never shifted to the defendant.

---

[4] *Vournazos*, *supra*, 198 Cal.App.3d at p. 958 cited former section 1203.04, subdivision (d), which contained the same language as section 1202.4, subdivision (f)(3)(A).

6

(*Id.* at p 959.) In contrast to *Vournazos*, here, the victim's e-mail and the detective's declaration established a prima facie case for restitution of the claimed loss.

## C. Award for Attorney's Fees

Defendant next contends that the trial court erred in awarding attorney's fees as restitution. We disagree.

As previously stated, section 1202.4, subdivision (f)(3) identifies several categories of economic losses. Defendant focuses on paragraph (H) of the statute, which provides that the restitution order shall include "[a]ctual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." (§ 1202.4, subd. (f)(3)(H).) Thus, he claims that section 1202.4 does not authorize restitution for a victim's attorney fees for obtaining a restraining order.

However, "[i]n examining the restitution statute, '[t]he intent of the voters is plain: every victim who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss.' [Citation.] As a result, 'the word "loss" must be construed broadly and liberally to uphold the voters' intent.' [Citation.] Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046.) Thus, here, the trial court properly compensated the victims for attorney's fees to obtain a restraining order. Though this economic loss is not enumerated in section 1202.4, it was a direct a result of defendant's constant threats and harassment.

Defendant relies on *People v. Fulton* (2003) 109 Cal.App.4th 876 to support his position. However, *Fulton* is not relevant to the present case. In *Fulton*, the defendant argued that "attorney fees are recoverable as restitution only to the extent they are

7

incurred to collect a recoverable restitution item, such as medical expenses and lost wages, and not to collect a nonrecoverable item such as pain and suffering noneconomic damages." (*Id.* at p. 883.) In interpreting section 1202.4, subdivision (f)(3)(H), *Fulton* reasoned that "the Legislature provided for the victim's recovery of reasonable attorney fees incurred to collect economic damages. But the Legislature additionally made an express policy determination that noneconomic damages are not recoverable as restitution and therefore a victim will not be reimbursed for those losses. From this rule, it rationally follows that the Legislature did not perceive a need for a victim to recover attorney fees incurred to collect noneconomic damages in order for the victim to fully recover restitution under the statute." (*Id.* at p. 884, fn. omitted.) *Fulton* did not consider the issue of whether attorney's fees incurred to obtain a restraining order constituted an economic loss under section 1202.4. Moreover, unlike in *Fulton*, here, there is nothing in section 1202.4 indicating that attorney's fees for obtaining a restraining order are not recoverable as restitution.

## IV. Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Grover, J.

9