Filed 11/13/15  P. v. Guerrero CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066021 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF31916) |
| IRMA GASTELUM GUERRERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Donal B. Donnelly, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for the Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

Irma Gastelum Guerrero pleaded no contest to one count of receiving a stolen vehicle.  (Pen. Code,[1] § 496d, subd. (a).)  The court sentenced her to two years in county jail, permitting her to serve one year in custody and one year on mandatory supervision.  The court also ordered her to pay a restitution fine of $300 under section 1202.4, subdivision (b); a restitution fine of $300 under section 1202.44, and additional restitution to two victims in the amount of $5,170.51.

Guerrero contends the court abused its discretion by ordering the victim restitution, which did not result from her conviction, and instead provided a windfall of $5,170.51 to the victims.  Guerrero also challenges the restitution fines of $300 each under sections 1202.4, subdivision (b) and 1202.44.  We affirm the restitution order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On September 16, 2013, El Centro Police Department officers responded to Escobedo Auto Body (Escobedo) to investigate a stolen vehicle incident.  Mario Escobedo told them that in the early morning two days earlier, the vehicle of one of his clients, Jesus Tellez, was stolen from the parking lot.  The theft was discovered when the front garage gate was found unlocked with its padlock cut.  Tellez's vehicle was at

---

[1]     Statutory references are to the Penal Code.

[2]     Because there was no preliminary hearing or trial, all facts are drawn from police reports, which the parties agreed formed the factual basis for Guerrero's plea.

2

Escobedo's shop for repairs of a dent under the front passenger headlight, and of the hood that could not close completely.

On September 17, 2013, police contacted Guerrero after arresting her friend, who said Guerrero had driven the stolen vehicle. Police saw Guerrero throwing away several items, including the key and alarm remote control for the stolen vehicle, and therefore they arrested her. Guerrero denied driving the stolen vehicle. Police checked the vehicle and noticed that its license plates had been changed, but saw no other damage to the vehicle.

Following Guerrero's plea, the probation department in a supplemental report sought additional restitution of $5,170.51 as follows: (1) for Escobedo, $500 deductible paid to an insurance company for the stolen vehicle; $1,070.00 for towing and storage; and $240.00 for fence repairs; and (2) for Tellez, $3,340.51 for damages caused by the theft and $20.00 for replacement of the license plates.

Before the restitution hearing, Guerrero argued in a brief that the entire amount of $5,170.51 recommended by the probation department was improper because she was convicted of receiving a stolen vehicle, not theft of the vehicle. She did not provide the court with an estimate of the restitution amount she believed was proper or evidence disputing the probation department's accounting. The People responded that under section 1202.4, the victims were entitled to the full restitution proposed in the probation report.

The court adopted the probation department's recommendation and granted restitution for the total amount of $5,170.51 to Escobedo and Tellez as set forth above.[3]

DISCUSSION

I.

*Sufficient Evidence Supports the Restitution Order*

Relying on *People v. Scroggins* (1987) 191 Cal.App.3d 502, Guerrero argues that insufficient evidence supported the restitution order, and instead the victims received windfalls. Specifically, Guerrero challenges the $3,340.51 ordered paid to Tellez to reimburse the insurance company for damage to the vehicle; the $20.00 ordered paid for re-issuance of the vehicle registration license; the $500 insurance deductible; the $240 to replace Escobedo's gate and lock; and the $1070 that Escobedo spent for towing and storage of the vehicle. Guerrero contends: "[She] was ordered to pay restitution for amounts not proximately caused by her offense of receiving a stolen vehicle. She never admitted stealing the vehicle in question; nor was there any other evidence to indicate that was the case. Proximate causation was never established. The method used to calculate those amounts was not rational. In sum, the necessary substantial factual support for the restitution award is lacking and the court applied an incorrect legal standard."

---

[3] The court explained: "Technically, I believe, I must order the $3,360.51 payable to the direct victim, Jesus Tellez, who then of course would contractually be obligated to repay [the insurance company]."

4

A. *Legal Principles Regarding Restitution and Standard of Review*

Restitution is constitutionally and statutorily mandated in California. (Cal. Const., art I., § 28, subd. (b); Pen. Code, § 1202.4.) Section 1202.4, subdivision (a)(1) authorizes restitution for the "victim of a crime who incurs an economic loss as a result of the commission of a crime." Subdivision (f) of section 1202.4 states: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." Section 1202.4, subdivision (f)(3) further provides: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following." The statute then proceeds to list 12 items. Subdivision (f)(3)(A) of section 1202.4 authorizes restitution for "[f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property or the actual cost of repairing the property when repair is possible."

"A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall." (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172.) But, "[t]here is no requirement the restitution order be limited

5

to the exact amount of the loss in which the defendant is actually found culpable." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; *Chappelone*, at p. 1172.)  The court need only use a rational method that is reasonably calculated to make the victim whole. (*Chappelone*, at p. 1172.)

"[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt."  (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)  Section 1202.4 does not, by its terms, require any particular kind of proof.  However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property.  (*People v. Foster* (1993) 14 Cal.App.4th 939, 946, superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245.)  When the probation report includes information about the amount of the victim's losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim.  (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.)  The defendant has the burden of rebutting the victim's statement of losses, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property.  (*Ibid*.)

Further, in determining whether there is a causal connection between the defendant's act and the victim's loss, the trial court may apply tort principles of causation. (*People v. Jones* (2010) 187 Cal.App.4th 418, 425 [there is "no reason why the various

6

principles involved in determining proximate causation under California tort law should not also apply in awarding victim restitution under California criminal law"].)  In California, courts apply the substantial factor test in determining proximate cause. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321.)  This test requires " ' "that the contribution of the individual cause be more than negligible or theoretical." ' "  (*Ibid.*)  A force that has " ' "only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor.' "  (*Id.* at p. 1322.)

In *People v. Holmberg*, a business's computer equipment and credit cards were damaged and stolen.  (*People v. Holmberg, supra,* 195 Cal.App.4th at pp. 1313-1314.) The defendant appeared in a store's video surveillance using one of the stolen credit cards, and multiple hard drives from the business were recovered in his home.  (*Id.* at pp. 1314, 1322.)  After defendant pleaded no contest to concealing stolen property, the court ordered him to pay $18,072 in victim restitution, including $10,000 for lost business.  (*Id.* at pp. 1315, 1316, 1318.)  On appeal, the defendant argued he was not liable for restitution because his conduct was not a substantial factor in causing the victim's losses. (*Id.* at p. 1318.)  Specifically, he claimed the losses were due to a burglary of which he was not convicted, and therefore the losses would have occurred even without his conduct.  (*Ibid.*)  In rejecting this argument, the court noted that there "can be more than one cause of injury and that multiple causes can combine to cause harm."  (*Id.* at p. 1322.)  Because he received the stolen property, thereby depriving the business of its use,

7

the defendant's conduct "was a concurrent cause of the victims' losses." (*Ibid.*)

We evaluate the court's restitution order for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663; *People v. Millard* (2009) 175 Cal.App.4th 7, 26.) " ' "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " [Citations.]' [Citation.] However, a restitution order 'resting upon a " 'demonstrable error of law' " constitutes an abuse of the court's discretion. [Citation.]' [Citation.] 'In reviewing the sufficiency of the evidence [to support a factual finding], the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.] . . . "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding.' " (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) "However, when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Garcia* (2011) 194 Cal.App.4th 612, 617.)

B. *Analysis*

Guerrero's argument is similar to one rejected in *People v. Holmberg, supra,* 195 Cal.App.4th 1310. We conclude the evidence amply supports the conclusion that there was a causal connection between Guerrero's actions and the victims' economic losses.

8

Because there can be more than one cause of injury, Guerrero's action of keeping the stolen vehicle for as long as she did was at least a concurrent cause of the victims' losses and therefore a substantial factor in Tellez's decision to replace the license plates and have the insurance company cover the costs of damage to the vehicle, and in causing Escobedo to incur costs for towing and storage, and repairing the fence and replacing the padlock. (See *Holmberg, supra,* at p. 1322 ["There was evidence that defendant received the stolen property on the day it was stolen. . . . Had he contacted law enforcement about the items when he received them, [one of the victims] would not have had to replace them[.] . . . Defendant's conduct played far more than a negligible or theoretical part in bringing about the victims' injuries and was a substantial factor in causing the harm they suffered"].) Accordingly, the restitution award did not amount to a windfall.[4] The victims were awarded restitution for the exact amount the victims represented their losses were in the probation report. Sufficient evidence supported the trial court's decision to order Guerrero to pay the total restitution amount.

In light of the causal connection between the victims' losses here and Guerrero's conduct, her reliance on *Scroggins* is misplaced. The defendant in *Scroggins* lived in an apartment with his sister. Four apartments in their complex were burglarized and several items were taken, including video cassette recorders, televisions, cameras, jewelry,

---

[4]     Rather than awarding the full amount of the business's loss ($27,269.12), the *Holmberg* court awarded $18,072 in restitution. (*People v. Holmberg, supra,* 195 Cal.App.4th at p. 1324.) The court determined which of the business's losses resulted from the burglary and which resulted from the defendant's concealing of stolen property. (*Ibid.*) As noted, Guerrero does not contend that the court here should have reduced the amount of restitution; she only argues the entire restitution award was improper.

telephone answering machines, purses, and a blood pressure cuff. (*Scroggins, supra,* 191 Cal.App.3d at p. 504.) The defendant's sister discovered three of the stolen items, all belonging to one victim, in her apartment and called the police. (*Ibid.*) Scroggins pleaded guilty to receiving stolen property. At sentencing, the probation department reported that the value of the "still missing property" from the other three burglaries was $2,366. (*Ibid.*) The court granted probation and ordered Scroggins to pay $2,366 in restitution as a condition of his probation. The appellate court reversed the restitution order because "Scroggins was never charged with or found criminally responsible for the burglaries." (*Id.* at p. 506.) Since Scroggins was convicted of receiving stolen property and the stolen items were recovered by the police and returned to the victim, the court concluded that the trial court erred in ordering restitution to the three remaining victims where there was no evidence that Scroggins was responsible for their losses. (*Ibid.*) Therefore, we conclude *Scroggins* is distinguishable on its facts.

## II.

Guerrero argues the restitution fines of $300 each imposed under sections 1202.4, subdivision (b) and 1202.44 violated the plea agreement, and the constitutional prohibition against ex post facto laws. Guerrero points out that her plea agreement form lists as one consequence of the plea: "I understand that I must pay a restitution fine ($280-$10,000), that I will also be subject to a suspended fine in the same amount, and that I must pay full restitution to all victims." Because the number "$280" is circled, Guerrero infers the trial court intended to order that amount of restitution fine. She

argues the court should be bound by that agreement. The People point out that the record is silent regarding who circled that amount or why, and contend the $300 restitution fine did not violate the plea agreement because Guerrero accepted it at the sentencing hearing and, further, that amount is within the range of permissible restitution fines.

A. *Background*

At the sentencing hearing, the court stated Guerrero was to pay "a $300 state restitution fine pursuant to [section] 1202.4 [, subdivision (b)]. . . . [¶] Finally, she's to pay a $300 state restitution fine fund [*sic*] pursuant to [section] 1202.44. That amount is stayed unless probation is revoked." The court asked Guerrero: "Do you accept probation on those terms and conditions?" Guerrero replied, "Yes." Without objection, the court imposed state restitution fines of $300 each under sections 1202.4 and 1202.44.

B. *Legal Principles*

Effective January 1, 2012, section 1202.4, subdivision (b)(1), was amended to state: "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000)." If the court sets the amount of the fine in excess of the minimum, the court is to consider any relevant factors, including the defendant's inability to pay and the gravity of the offense, but "[e]xpress findings by the court as to the factors bearing on the amount of the

11

fine shall not be required," and no separate hearing is necessary. (§ 1202.4, subd. (d).)

The ex post facto clause requires that the determinative date for calculation of restitution fines is the date of the offense, not the date of imposition of judgment. (*People v. Souza* (2012) 54 Cal.4th 90, 143.)

C. *Analysis*

When the statutory $300 restitution fines were imposed at sentencing, Guerrero did not object. The sentencing was continued. Guerrero did not subsequently challenge the fines at the continued sentencing hearing. This record does not support a conclusion that the trial court intended to impose the minimum $280 fines under the statutes. And we cannot assume the court intended to impose the minimum fines but was unaware that the applicable minimum was $280. The court did not expressly state that it intended to impose the minimum fines, and we will not presume the court applied the wrong statutory law (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032 ["It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties"].) The court may simply have been exercising its discretion to impose the fines it found appropriate. From the record, we can only conclude the trial court intended to impose the $300 fines.

Under these circumstances, it was incumbent upon Guerrero to object to the fine amounts in the trial court and bring the alleged mistake to the court's attention. Her failure to do so forfeits the claim on appeal. (*People v. Gibson* (1994) 27 Cal.App.4th

12

1466, 1468.)  The forfeiture rule applies "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices."  (*People v. Scott* (1994) 9 Cal.4th 331, 353.)  By failing to object on ex post facto grounds in the trial court, Guerrero has forfeited the contention.  (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189.)

DISPOSITION

The restitution order is affirmed.


                                                              O'ROURKE, J.

WE CONCUR:


McDONALD, Acting P. J.


AARON, J.