Filed 8/16/16  In re Martinez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re MICHELLE LYNN MARTINEZ, | C077712 |
| On Habeas Corpus. | (Super. Ct. Nos. 10F3962, 10F2930, 10F3974, 10F4734) |

As part of a negotiated plea bargain to resolve four pending criminal cases, petitioner Michelle Lynn Martinez pleaded no contest to burglary, a vandalism count was dismissed, and she did not agree to a *Harvey* waiver.[1]  In these habeas corpus proceedings, she contends the order to pay a landlord restitution for the damage to his property was unauthorized, and her lawyers at trial and on appeal were constitutionally ineffective for failing to challenge the order because there was no evidence the economic loss sustained by the landlord was the result of her criminal conduct.  Although victims of crime in California enjoy a constitutional right to restitution, detailed in statute and zealously protected by the judiciary, the record supports petitioner's claim that there is no

---

[1]  *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

causal connection between the conduct underlying the burglary and the economic loss the property owner suffered. Thus, we set aside the restitution order.

## FACTS

**Substantive Facts**

Because petitioner entered a negotiated plea agreement, the facts are taken from the transcript of the preliminary hearing and the probation report. Justin Spencer and Shawn Myers rented a house from Gaylen Eslinger in Shasta County. Fearful that petitioner was going to kill Spencer because petitioner believed Spencer had stolen a large amount of money from her, Spencer and Myers vacated the house for a couple of months in the fall of 2009. On November 24, 2009, their friend, Susan Gilbert, was packing their personal belongings when four trucks pulled up to the house. Gilbert called the police and told them "there were people there vandalizing the residence and causing a disturbance." She provided two license plate numbers, one registered to petitioner and another to her husband. She left the residence as soon as the disturbance began. She was too afraid to meet with the investigating police officer and provided no information apart from her initial phone report. She did not testify at the preliminary hearing.

The reporting officer did not meet with Spencer and Myers until January 14, 2010. They eventually reported a loss of $24,120 in stolen and damaged personal property and furniture. Myers stated that the stolen property included the landlord's washer and dryer. In the backyard the officer observed broken cabinets, boxes of clothing strewn about, and mattresses flipped over. Inside, she testified, there was "damage done to . . . walls [and] floors." Drywall was torn off the walls, the carpets were torn up, and the vents were torn out of the floorboards. At that time, Eslinger provided an estimate of approximately $7,000 in damages. The probation officer wrote, "The home sustained extensive damage to walls, windows, flooring, ductwork, and doors." Eslinger ultimately lost four months' rent while the repairs were being completed and requested $11,181.00 in restitution.

2

**Procedural Facts**

The felony complaint in Shasta Superior Court case No. 10F3962 charged petitioner in count 1 with first degree residential burglary as follows:

"Defendant(s)

"Michelle Lynn Martinez,

"On or about the 24th day of November, 2009, willfully and unlawfully entered an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Justin Spencer and Shawn Myers, with the intent to commit larceny and any felony."

In count 2, the complaint further charged her with vandalism as follows:

"Defendant(s)

"Michelle Lynn Martinez,

"On or about the 24th day of November, 2009, did maliciously and unlawfully deface with graffiti and other inscribed material, damage, and destroy house damaged including walls, carpeting, vents, real and personal property which belonged to Gaylin [*sic*] Eslinger, in the amount of four hundred dollars ($400.00) and more."

She was also charged with receiving stolen property in February 2010 and various enhancements not relevant to the issues before us.

On September 20, 2010, petitioner entered a no contest plea to first degree residential burglary as alleged in count 1. The factual basis for her plea is found in the preliminary hearing transcript filed on August 31, 2010. Pursuant to her plea agreement, the vandalism count was dismissed. On November 2, 2010, the court imposed the 11-year aggregate sentence as contained in the plea agreements for the four cases; various fines, fees, and assessments; and ordered the payment of restitution in amounts to be determined. Petitioner filed a notice of appeal on November 29, 2010, in case No. C066838 and an amended notice of appeal on January 4, 2011, and requested a certificate of probable cause. The request was denied on November 30, 2010.

3

After the notice of appeal was filed in case No. C066838, a restitution hearing was held on January 13, 2011. Petitioner objected to any award of restitution to Eslinger, claiming any restitution was "largely the result of mistakes made and errors and omissions by her attorneys." The court ordered petitioner to pay $13,246.18 in restitution based on additional receipts for repairs that were submitted after the probation report was drafted.

Appointed counsel filed an opening brief in case No. C066838 on February 1, 2011, pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

On February 3, 2011, in case No. C067322, petitioner filed a notice of appeal and request for certificate of probable cause in pro. per. regarding the restitution order of January 13, 2011. In her notice of appeal, she challenged her plea and the order for victim restitution. In her request for a certificate of probable cause, she wrote: "I have reason to believe I was ordered victim restitution in this by error. The name of the victim I was ordered to pay restitution to was not a victim listed in my accusatory pleading nor was there an ammended [*sic*] filing. Also, victim restitution was not part of the plea-bargain nor was vandalism a charge that I agreed to plea [*sic*] to. I also have a letter signed by the actual victim of this actual case which I have only recently received which would exonerate me from liability. Attached is a copy of a letter from Justin Spencer." The request for a certificate of probable cause was denied the same day.

On February 8, 2011, petitioner filed an amended notice of appeal and request for certificate of probable cause in case No. C067322 based on a "[d]enial of Marsden Hearing" and a "[d]enial to withdraw plea." In her request for a certificate of probable cause, she again objected to the restitution order payable to Gaylen Eslinger for the same reasons she articulated in the first notice of appeal, filed February 3, 2011. The request was denied.

On February 25, 2011, petitioner filed a supplemental brief in case No. C066838. We affirmed the judgment without mention of her challenge to the restitution order,

4

based primarily on her failure to obtain a certificate of probable cause. (*People v. Martinez* (Apr. 12, 2011, C066838) [nonpub. opn.].)

On September 7, 2011, appointed counsel filed an opening brief in case No. C067322 pursuant to *Wende*, *supra*, 25 Cal.3d 436. On September 30, 2011, petitioner filed, in pro. per., a supplemental brief in that case. She reiterated her objection to the restitution order to pay damages to Gaylen Eslinger. She wrote: "In Shasta County case No. 10F3962, appellant pled no contest to the charge of Penal Code 459, as alleged in count 1 of information in this case. Alleged victims for this charge were Justin Spencer and Shawna Meyers [*sic*].

"In count 2 of the same case, appellant was charged with Penal Code 594(B)(1) but said charge was dismissed.

"At the restitution hearing, restitution was ordered to Gaylin [*sic*] Eslinger, property owner of damaged house relating to the vandalism charge." Again, we affirmed the judgment without addressing her challenge to the restitution order. We concluded, "Defendant fails, however, to raise any claim of error in her supplemental brief." (*People v. Martinez* (Apr. 20, 2012, C067322) [nonpub. opn.].)

On October 17, 2012, petitioner filed a petition for writ of habeas corpus in Shasta County Superior Court. The court denied the petition, explaining: "[O]n January 13, 2011, the Petitioner was present at the restitution hearing in which the Court ordered $13,246[.]18 to be paid to Gaylen Eslinger, the property owner of the dwelling place which is the subject of the Burglary in the First Degree to which Petitioner entered a plea of no contest on September 20, 2010. As such, Mr. Eslinger is an appropriate person to receive restitution for the damages caused by/during the commission [of the] criminal violation."

Petitioner now petitions this court for a writ of habeas corpus, alleging ineffective assistance of trial and appellate counsel in failing to challenge the restitution order.

5

## DISCUSSION

## I

## Restitution:  The Substantive Claim

Petitioner's inadequacy of counsel claim turns on whether there is merit to her challenge to the restitution order since she can demonstrate prejudice, a necessary element of her constitutionally ineffective assistance of counsel argument, only if the restitution order is unauthorized or improper.  We therefore begin with the dispositive question of law—did petitioner's criminal conduct result in Gaylen Eslinger's economic losses to his property?  Our review is de novo.  (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1275 (*Walker*).)

Victims of crime in California have a constitutional right to restitution.  Article I, section 28 of the California Constitution provides:  "(A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer.

"(B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(A), (B).)

The Legislature, as directed by the people, has enacted a statutory scheme to effectuate a victim's constitutional right to restitution.  Penal Code section 1202.4 begins emphatically:  "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).)  "Thus, the language of California Constitution article I, section 28, subdivision (b) grants the right to receive restitution for losses resulting from the crime of which the defendant was convicted. Implementing that right, section 1202.4 requires a defendant to pay restitution for losses

6

resulting from the criminal conduct supporting the crimes of which the defendant was convicted." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1247 (*Lai*).)

Petitioner raises two red herrings. Both can be summarily dismissed. First, she argues the court improperly considered the conduct underlying the dismissed vandalism count to justify the restitution when she had not entered a *Harvey* waiver. Second, in a somewhat related claim, she suggests she was denied due process because Eslinger was not named as a victim of the residential burglary count, but only as a victim of the vandalism count, which was dismissed. Neither argument has merit.

It is true, as petitioner alleges, that in the absence of an express waiver, the trial court cannot utilize a defendant's conduct in committing a dismissed charge as a basis for a sentence on the counts that were not dismissed. (*Harvey*, *supra*, 25 Cal.3d 754.) *Harvey* waivers apply to restitution orders. But as the Attorney General points out, the trial court ordered defendant to pay Eslinger restitution as a victim of the burglary, not because he was a victim of the alleged vandalism. For purposes of restitution, Eslinger, the property owner, is clearly a victim because he incurred substantial economic losses. The fact that he did not have a possessory right to occupy the premises has no bearing on his right to restitution under the expansive constitutional guarantee to victims of crime that they enjoy a right to restitution for the losses they sustain.

Nor is there any merit to petitioner's contention that the restitution order is unlawful because Eslinger was not named as a victim of the burglary. As the court in *Walker* stated succinctly: "Whether these potential victims were specifically named in the charging document is irrelevant. Section 1202.4 imposes no such duty to name, and judicially imposing such a duty would make a victim's entitlement to restitution turn on the happenstance of whether the prosecutor located or named that victim before the defendant pled or was convicted. Such absurd results are to be avoided." (*Walker*, *supra*, 231 Cal.App.4th at p. 1276.)

7

The scope of the court's authority to impose restitution depends on whether the defendant is placed on probation or sentenced to jail or prison. A court can order restitution to a victim as a condition of probation, whether or not the defendant was convicted of the underlying crime. (*People v. Percelle* (2005) 126 Cal.App.4th 164, 179 (*Percelle*).) "This greater latitude to impose restitution arises from the purpose of probation to foster rehabilitation [citation] as well as from the defendant's consensual decision to forgo imprisonment in favor of probation and its potentially more onerous conditions." (*Walker*, *supra*, 231 Cal.App.4th at p. 1274.)

Where, as here, however, the defendant is sentenced to state prison, the court has no authority to transgress the statutory boundary on restitution. The economic loss suffered by the victim must have been incurred "as the result of the defendant's criminal conduct." (Pen. Code, § 1202.4, subd. (f)(3).) "The issue is only whether, in addition to paying restitution for losses caused by the conduct for which he was convicted, a defendant sentenced to state prison must also pay restitution for losses caused by conduct for which he was *not* convicted. Precluding restitution for such nonadjudicated conduct does not undermine the purpose of article I, section 28, subdivision (b), or the policies supporting restitution. It simply implements the plain meaning of those provisions in nonprobation cases, unexpanded by the greater scope of restitution available through a probationary grant." (*Lai*, *supra*, 138 Cal.App.4th at p. 1249.) Thus, defendant's criminal conduct must be the cause in fact and the proximate cause of the victim's economic losses. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321-1322 (*Holmberg*); *People v. Jones* (2010) 187 Cal.App.4th 418, 425 (*Jones*).)

Several cases help to explain the meaning of causation in restitution cases involving a defendant sentenced to state prison. In *People v. Scroggins* (1987) 191 Cal.App.3d 502 (*Scroggins*), the defendant pleaded guilty to receiving stolen property. Despite never being charged with any burglaries, the defendant was ordered to pay restitution to the burglary victims. (*Id*. at pp. 504, 506.) The Court of Appeal

8

reversed even though restitution had been ordered as a condition of probation and therefore the court had much broader discretion. "The court did not conclude—nor from this record could it have—that Scroggins was responsible for these other losses that it ordered paid.

"In short, the instant restitution order has no relationship to the crime for which Scroggins was convicted, and we can find no relationship between it and the potential for a 'salutary' rehabilitative effect it could have on the defendant." (*Scroggins*, *supra*, 191 Cal.App.3d at p. 506.)

In the nonprobation context, "a restitution order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted." (*Percelle*, *supra*, 126 Cal.App.4th at p. 180.) In other words, "when a defendant is sentenced to state prison, [Penal Code] section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted." (*Lai*, *supra*, 138 Cal.App.4th at p. 1249.) In *Lai*, therefore, the Court of Appeal reversed a restitution order to pay for fraudulently obtained governmental aid before the charged period. (*Ibid*.)

In *People v. Woods* (2008) 161 Cal.App.4th 1045 (*Woods*), the defendant was convicted as an accessory after the fact to murder and ordered to pay restitution to the family of the murder victim. (*Id*. at p. 1047.) Reversing the restitution order, the court explained: "The Attorney General argues that a conviction of being an accessory after the fact 'has sufficient nexus to the victim's economic loss so as to render that loss "a result of the defendant's conduct . . ." under Penal Code section 1202.4, subdivision (f).' We disagree. As we acknowledged in *In re I.M.*, a charge of being an accessory after the fact is 'based on conduct taking place *only after* the loss was sustained.' (*In re I.M.* [(2005)] 125 Cal.App.4th 1195, 1208, italics added.) Instead, we agree with the court in *Lai* that section 1202.4 limits the scope of victim restitution to the operative crime that resulted in the loss. [Citation.] Here, the loss to the Mascarenas family occurred because

9

of the murder committed by Saucer. Defendant was not convicted as a coconspirator or as an aider or abettor to the murder itself. Thus his criminal conduct did not cause the loss for which compensation was sought." (*Woods*, at p. 1052.)

Restitution orders withstood serious challenges in *Holmberg*, *supra*, 195 Cal.App.4th 1310 and *Walker*, *supra*, 231 Cal.App.4th 1270 based on close examinations of proximate causation and accurately depicting the scope and meaning of the conduct of the defendants. In *Holmberg*, the defendant pleaded no contest to one count of concealing stolen property and one count of using an altered, stolen, or counterfeit access card. (*Holmberg*, at p. 1315.) Several businesses had been burglarized and their computers, hard drives, CPU chips, memory chips, monitors, backup drives, a coffeemaker, compact discs, and credit cards were found in the defendant's possession. (*Id.* at p. 1314, fn. 2.) Relying on *Scroggins*, *supra*, 191 Cal.App.3d 502 and the principles stated above, the defendant argued his conduct (receiving stolen property) was not a proximate cause of the victims' losses. (*Holmberg*, at pp. 1317-1318.) The court disagreed.

The "substantial factor" test is used in California to determine proximate causation. The substantial factor standard is broad and requires only that the contribution of the cause be more than negligible or theoretical. Moreover, there can be multiple causes that can combine and cause injury. (*Holmberg*, *supra*, 195 Cal.App.4th at pp. 1321-1322.) Thus, Holmberg's restitution order was upheld because by holding on to the property and knowing it was stolen, the defendant's conduct was a concurrent cause of the victims' losses and a substantial factor in causing their damages. (*Id.* at pp. 1323-1324.) Moreover, the trial court carefully included only those losses attributable to the defendant's conduct. (*Id.* at p. 1324.)

Similarly, in *Walker*, *supra*, 231 Cal.App.4th 1270, the defendant also claimed the trial court exceeded its authority by imposing restitution for crimes of which he was not convicted. In *Walker*, the defendant pleaded no contest to four counts of driving under

10

the influence (DUI) causing injury. (*Walker*, *supra*, 231 Cal.App.4th at p. 1273.) The trial court ordered him to pay restitution to two victims who had been named in the charging document and two victims who had not been named. (*Ibid*.) Like petitioner, he challenged the restitution order as to the two victims who had not been named even though he conceded they had been involved in the accident he caused. (*Ibid*.)

Focusing on the specific conduct of which the defendant stood convicted, the court examined what conduct is encompassed by the crime of DUI causing injury. The court concluded, "Because there was only one instance of driving under the influence—and because Defendant entered a plea to that instance—the losses suffered by any of the persons in the vehicles involved in that instance are losses arising out of 'the criminal conduct for which the defendant has been convicted.' [Citation.] . . . [¶] . . . [¶] We accordingly hold that a court may impose restitution for all victims of a single incident of DUI causing injury for which the defendant is convicted and sentenced to prison, whether or not those victims are named in the charging document." (*Walker*, *supra*, 231 Cal.App.4th at pp. 1275-1276.)

Petitioner contends the restitution order cannot stand because her criminal conduct did not actually or proximately cause the property owner's economic losses. She argues the order to pay restitution to Eslinger was analogous to the restitution orders overturned in *Scroggins*, *Jones*, and *Woods*. She emphasizes that she pleaded no contest to burglary, not vandalism, and that it was the unidentified persons who vandalized Eslinger's property who caused his economic losses. The Attorney General, on the other hand, maintains that the property owner is a victim of the burglary as well, and petitioner, by entering a no contest plea, admitted she caused the damages to any of the victims of the burglary. An examination of the record in this case belies the Attorney General's argument that *any* plea to a burglary charge, despite the nuanced evidence of defendant's actual conduct, justifies restitution.

11

It bears repeating that contrary to petitioner's position in these proceedings, the mere fact that Eslinger was not named in the complaint as a victim of the burglary did not foreclose the trial court from ordering restitution to him. *Walker* soundly rejects that contention. But we conclude there must be some evidence that petitioner's conduct proximately caused the property owner's losses. Here there is just no evidence in the preliminary transcript, the probation report, or the hearing during which her plea was accepted that her criminal conduct caused the losses. There is no question the property owner sustained substantial damages, but the record does not support an implied finding that it was petitioner who caused those damages.

We begin with the only witness, Susan Gilbert. Gilbert would not cooperate with the investigation of the burglary, nor did she testify at the preliminary hearing. Thus, the only evidence in the record is what she reported in her initial call to the police and in one follow-up conversation. Gilbert provided very little information about petitioner other than to name her as one of the intruders and to provide a license plate number that confirmed she owned one of the trucks that appeared at the residence on the evening of November 24, 2009. She did not state that petitioner damaged any of the property. In fact, Gilbert stated that she (Gilbert) left right away. There simply was no evidence, beyond the plea itself, that petitioner committed larceny or any other felony against Eslinger once she entered the residence.

Justin Spencer and Shawn Myers were the targets of the burglary. When interviewed about six weeks after the burglary, Spencer told the investigator that he believed petitioner had planned to kill him. Spencer and Myers had vacated the premises out of fear. They reported stolen property that was taken from the residence and later found in petitioner's possession. Myers also stated that Eslinger's washer and dryer were stolen. But Eslinger did not report damages for a washer and dryer, and neither one was found in petitioner's possession.

It is significant that the police investigator did not survey the damage to the house until six weeks after the reported vandalism. As a consequence, there is no evidence as to what damage actually occurred on November 24, 2009, and additional damage could have been done by others in the intervening days.

We agree with petitioner there is absolutely no evidence that she aided and abetted or conspired with others to cause Eslinger's losses. The only evidence is that she was present at the residence and she stole Spencer and Myer's property. This evidence is consistent with her no contest plea to count 1 in the complaint in which she was charged with burglary for entering their residence to commit larceny or another felony. Perhaps, as the Attorney General argues, in most cases a plea to a burglary charge would be an admission that a defendant caused the victim's damages. But given the specificity of her plea and the utter lack of any evidence that it was petitioner, either alone or in combination with the other intruders, who damaged the property, we cannot say Eslinger's economic losses were the result of petitioner's criminal conduct.

**II**

Petitioner, unlike her trial and appellate lawyers, exhibited extraordinary diligence in challenging the restitution order. As outlined in our factual statement, she raised the issue over and over again—in the notice of appeal, in requests for certificates of probable cause, in the supplemental briefs she filed in pro. per. following her lawyer's *Wende* briefs, in correspondence with her lawyer, and in her petition to the trial court for a writ of habeas corpus. Even her lawyer reported to the trial court that petitioner did not believe the restitution order was authorized. Despite her persistence in raising the issue, her lawyers did not raise, argue, or challenge the restitution order. The Attorney General would not hold the lawyers accountable; rather, she contends the issue is untimely and should have been resolved on direct appeal. We disagree. Moreover, any procedural missteps are an integral part of petitioner's ineffective assistance of counsel claim. We turn first to the law governing her ineffectiveness claim.

13

A claim of ineffective assistance of counsel requires a showing that "(1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice." (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1146-1147.) The requisite prejudice can be established where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674].)

We began with a discussion of the merits of petitioner's challenge to the restitution order to determine whether the lawyers' collective failure to pursue the claim resulted in prejudice. As explained at length above, petitioner was right—the restitution order was unauthorized because her criminal conduct did not cause the $13,246.18 Eslinger sustained in economic damages. Thus, on the merits there is no question that petitioner was prejudiced by her lawyers' persistent refusal to challenge the order. The lawyers' failure to assert the issue, particularly in light of petitioner's ongoing requests to do so, falls below an objective standard of reasonableness under prevailing professional norms. We cannot imagine a tactical reason for failing to raise an issue that would save an indigent prisoner over $13,000.

Although the lawyers were either ignorant of or wrong about the law (*People v. Jenkins* (1975) 13 Cal.3d 749, 753-754), the Attorney General would excuse them on procedural grounds and hold petitioner responsible for her lawyers' shortcomings. In other words, the Attorney General would have us dismiss the petition because the challenge comes too late or the issue should have been decided on direct appeal. Ironically, it was petitioner who attempted to challenge the order at each step in the process, and it was the lawyers who failed or refused to raise the challenge. As a result, the procedural hurdles the Attorney General argues should block petitioner's habeas corpus proceedings before us are, we believe, part and parcel of her ineffectiveness claim.

14

For surely petitioner cannot be punished for her lawyers' hesitancy when she pursued the restitution challenge with such resolve and consistency. She raised it in a notice of appeal, in both requests for a certificate of probable cause, and in both supplemental briefs after her lawyers ignored the restitution challenge and filed *Wende* briefs. Four months after her second appeal became final in June 2010 she filed a petition in the superior court. Hampered by lack of time and resources, the only available redress she did not attempt was in filing a petition for rehearing in this court or a petition for review before the California Supreme Court. But her lawyer had erroneously advised her there was no authority to support her position. We conclude that from the inception, petitioner insisted the restitution order was illegal and urged her appointed attorneys to litigate the issue, and thereafter she acted with all the diligence the circumstances surrounding her incarceration permitted. We agree with petitioner that if there were any minor delays or missteps along the way, they were either trivial or petitioner has shown good cause because she was adrift in prison, alone and forced to single-handedly pursue legal redress for the unlawful restitution order. (*In re Robbins* (1998) 18 Cal.4th 770, 780-781; *In re Saunders* (1970) 2 Cal.3d 1033, 1040-1041.)

Alternatively, the Attorney General argues that petitioner already raised the issue in her direct appeal and has simply "repackaged" it as ineffective assistance of counsel. She therefore insists that habeas corpus relief is foreclosed. As pointed out above, however, petitioner's claim regarding the illegal order necessarily hinges on her claim of ineffective assistance of counsel. To the extent the Attorney General is also arguing that petitioner should have raised the issue on direct appeal, that is precisely the crux of her ineffective assistance of counsel claim in these proceedings. Additionally, since we have concluded that the restitution order was illegal and violated the causation requirements of Penal Code section 1202.4, subdivision (f), it was an unauthorized sentence that may be attacked at any time. (*People v. Smith* (2001) 24 Cal.4th 849, 852.) For all these reasons,

15

as well as in the interest of justice, we conclude there is no procedural bar to petitioner's claim of ineffective assistance of counsel.

## DISPOSITION

The restitution order to pay Gaylen Eslinger the sum of $13,246.18 is set aside.

             RAYE        , P. J.

We concur:

      HOCH      , J.

      RENNER    , J.