Filed 7/11/22 P. v. Esquivel CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PERCELLA MARISSA ESQUIVEL et al.,<br><br>    Defendants and Appellants. | H048810<br>(Santa Clara County<br>Super. Ct. No. C1808374) |

Defendants Percella Marissa Esquivel and Robert Anthony Ruiz pleaded no contest to several charges including assault with a deadly weapon and attempted robbery in connection with a fatal stabbing at a bar in San Jose. Ruiz further admitted a gang enhancement. The trial court imposed prison terms of six years eight months on Esquivel and five years four months on Ruiz. The court further ordered restitution in the approximate amount of $23,000 to reimburse the victims for funeral and burial expenses and a home security system.

Defendants challenge the restitution order on the grounds that the conduct for which they were convicted did not cause the victims to incur the funeral and burial expenses. They also challenge restitution for the home security system on the ground it was statutorily unauthorized. For the reasons below, we conclude these claims are without merit.

Esquivel further contends the trial court erred by failing to calculate her custody credits. The Attorney General concedes the merit of this claim, and we accept the concession. We will reverse the judgment as to Esquivel and remand for the sole purpose of calculating custody credits. As to Ruiz, we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

A grand jury indicted Esquivel and Ruiz, together with four other codefendants, on the following counts: count 1—the murder of Francisco Navarro (Pen. Code, § 187, subd. (a))[1]; count 2—attempted robbery in the second degree (§§ 211, 212.5, subd. (c), 664); and counts 3, 4, and 5—assault with a deadly weapon (§ 245, subd. (a)(1)). The grand jury further indicted Ruiz on: count 6—participating in a criminal street gang (§ 186.22, subd. (a)); and count 7—reckless driving while fleeing a police officer (Veh. Code, § 2800.2, subd. (a)). As to counts 1, 2, 3, 4, 5, and 7, the indictment alleged the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)).

Esquivel entered an agreement to plead no contest to counts 2, 3, 4, and 5 in exchange for a sentence of six years eight months in prison, and she was released from custody based on the time served. Ruiz entered an agreement to plead no contest to counts 2, 3, 6, and 7, and to admit the gang enhancement in exchange for a sentence of five years four months. At sentencing, the trial court accepted these pleas, imposed the contemplated sentences, and entered a general order of restitution as to each defendant.

The family of Frank Navarro and the California Victim Compensation Board sought restitution in the amounts of $22,505 for burial and funeral expenses and $874 for upgrades to a home security system. Esquivel and Ruiz filed briefs in opposition setting forth substantially similar grounds to those raised here, and the trial court held a hearing

---

[1] Subsequent undesignated statutory references are to the Penal Code.

2

on the matter.  The trial court ordered restitution in the requested amounts with Esquivel and Ruiz jointly and severally liable.

### B. Facts of the Offenses

The charges arose from a fatal stabbing at the Tres Gringos Cabo Cantina in San Jose.  Esquivel and her brother Joseph Esquivel[2] tried to enter the bar, but when the security guard at the door examined Joseph's identification card, the guard discovered it actually belonged to Esquivel's other brother and codefendant Santos Trevino.  The guard confiscated the identification card and Joseph became enraged.  Esquivel repeatedly told the guard to return the card and that if he did not, "it's going to get worse."  When the guard refused to return it, Esquivel and Joseph both called Trevino.

A short while later, a car arrived with Trevino, Ruiz, and two other codefendants.  Ruiz was driving.  The group got out of the car, approached the guard, and attempted to grab away the identification card.  A violent melee ensued, at which point Ruiz returned to the car.  Francisco Navarro, who was another security guard at the bar, intervened in the fight and attempted to defuse the situation.  Trevino, Joseph, and one of the other men from the car attacked Navarro and he was stabbed to death. Trevino and another one of the attackers were seen with knives, but there was no indication that Esquivel or Ruiz personally stabbed Navarro.

The prosecution argued to the grand jury that all six defendants were members or associates of the Varrio Norte Catorce, a Norteño criminal street gang, and that they committed the attack in association with the gang.

## II. DISCUSSION

### A. Restitution for Burial/Funeral Expenses and a Home Security System

Esquivel and Ruiz challenge the trial court's order of restitution for burial and funeral expenses and the cost of a home security system for Navarro's family.  Esquivel

---

[2] We refer to Joseph Esquivel by his first name to avoid confusion.

contends there was no substantial evidence her actions were a proximate cause of Navarro's death. Ruiz argues he was not convicted of any crime related to Navarro's death and that his actions were not a proximate cause of it. Both defendants contend restitution for a home security system was statutorily unauthorized. The Attorney General contends restitution was proper because both the defendants pleaded no contest to the charge of assault with a deadly weapon that resulted in Navarro's death. The Attorney General further contends restitution for a home security system was authorized.

### 1. *Legal Principles*

"It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) Section 1202.4 further provides, in relevant part, that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) This section "authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime of which the defendant was convicted." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1101.) In non-probation cases, "restitution under section 1202.4 is limited to losses arising from the criminal conduct that formed the basis for the defendant's conviction." (*People v. Sy* (2014) 223 Cal.App.4th 44, 65.)

Tort principles of causation apply to restitution claims in criminal cases. (*People v. Jones* (2010) 187 Cal.App.4th 418, 424-427.) There are two aspects of causation: cause in fact (also called direct or actual causation), and proximate cause. (*Id.* at p. 424.) An act is a cause in fact if it is a necessary antecedent of an event. California courts have adopted the "substantial factor" test in analyzing proximate cause. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321-1322.) The substantial factor standard is relatively

4

broad; the contribution of the individual cause must be more than negligible or theoretical. (*Ibid.*) A force that plays only an infinitesimal or theoretical part in bringing about the loss is not a substantial factor. A very minor force that does cause harm, however, is a substantial factor. (*Ibid.*)

"As a general matter, we review restitution orders for an abuse of discretion. [Citation.] However, where the specific issue is whether a court has the authority to issue restitution, we review that question of law independently. [Citation.] And where the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1098.)

### 2. *The Restitution Order Was Not an Abuse of Discretion*

Esquivel argues her actions were neither a direct cause nor a proximate cause of Navarro's death. Ruiz contends the crime to which he pleaded was not the cause of Navarro's death, and he argues he did not proximately cause it. We are not persuaded.

Both defendants pleaded no contest to count 3 of the indictment, among other charges. Count 3 alleged both defendants and their codefendants committed an assault with a deadly weapon—specifically, a knife—against Navarro. The prosecutor below and the Attorney General here identify this as the crime that resulted in Navarro's death. But Ruiz takes the position that he pleaded to some other "unidentified assault," not the assault that resulted in Navarro's death. He cites to nothing in the record supporting this claim. To the contrary, the record makes clear the assault crime to which he pleaded was the deadly knife attack on Navarro.

Ruiz points out that the murder count was dismissed. At the plea hearing, however, the prosecutor set forth the basis of the plea agreement that resulted in the dismissal of that murder count. The prosecution dismissed the murder charge after the courts of appeal upheld the constitutionality of Senate Bill No. 1437, which restricted the

doctrine of natural and probable consequences as it applies to murder.[3]  As the prosecutor explained at the plea hearing, "After speaking with defense counsel about our office's position, that we recognize now that the change in the law is a constitutional change to the definition of murder, we were provided with offers to dispo related to both defendants."  After the trial court confirmed counsel for Ruiz was able to hear the prosecutor, the prosecutor added that "based upon those understandings, the offer made by Mr. Ruiz, through his attorney, was a dismissal of Count 1, the murder charge, because of the fact that the People would not be able to pursue it.  He would be pleading to Count 2, the attempted robbery of Juan Solis.  He would also be pleading to Count 3, the assault with a deadly weapon against Frank Navarro, the defendant [*sic*] who was the murder victim in Count 1."  Counsel for Ruiz made no objection or correction to this statement, and Ruiz then expressly agreed to the terms of the plea agreement.  Ruiz does not cite any other facts, evidence, or statements in any portion of the record to support his claim that he was actually pleading to some other assault with respect to that count.

As to the causal effects of their conduct, the record establishes that neither defendant participated personally in the fatal stabbing.  Their convictions and stipulations to a factual basis for the charge imply the defendants were liable for aiding and abetting the stabbing.  Esquivel's conduct included calling Santos Trevino on the phone after the security guard at the bar confiscated Trevino's identification card.  Substantial evidence supports an inference that if she had not called her brother, the subsequent events would not have occurred, making her conduct a direct cause of the stabbing.  When the guard refused to relinquish the identification card, Esquivel warned him that if he did not return it, "it's going to get worse."  Her warning shows that the subsequent violence was foreseeable.  Substantial evidence thereby supports a finding that her conduct was also a proximate cause of the stabbing.  Ruiz's conduct included driving his fellow gang

[3] Senate Bill No. 1437 did not affect liability for the natural and probable consequences of assault with a deadly weapon.

members to the scene of the crime. It is reasonable to infer the stabbing would not have happened if he had not driven the direct perpetrators there, and it was entirely foreseeable that violence would ensue when they arrived. Substantial evidence supports a finding that his act of driving fellow gang members to the scene of the crime was both a direct and proximate cause of the stabbing.

As to the restitution for a home security system, both defendants argue it was not statutorily authorized. Subdivision (f)(3)(J) of section 1202.4 *mandates* restitution for "[e]xpenses to install or increase residential security incurred related to a violation of Section 273.5, or a violent felony as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks." (§ 1202.4, subd. (f)(3)(J).) Ruiz and Esquivel accurately point out that they were not convicted under section 273.5 or for any violent felony listed in section 667.5, subdivision (c). And we would agree the trial court was not mandated to order restitution under that subdivision. But that subdivision is not the sole source of a court's authority to order restitution, and nothing in the plain language limits the court's discretionary authority to order restitution for a home security system on the more general grounds authorized section 1202.4 as outlined above. The Court of Appeal for the Third District so held in *People v. Henderson* (2018) 20 Cal.App.5th 467 (*Henderson*). "[W]here a victim incurs the economic loss of installing a security system as a direct result of a defendant's conduct, the trial court may include that amount in a victim restitution award regardless of the crime of conviction." (*Id.* at p. 472.) The Court of Appeal for the First District, Division 2, adopted the same reading of the statute. (*People v. Brooks* (2018) 23 Cal.App.5th 932, 946 (*Brooks*).)

Esquivel relies instead on *People v. Salas* (2017) 9 Cal.App.5th 736 (*Salas*). In *Salas*, the Court of Appeal for the Fourth District, Division 1, applied various canons of statutory construction and looked to the legislative history of the statute to conclude the legislature intended to exclude home security systems from the other portions of the

7

statute apart from subdivision (f)(3)(J) of section 1202.4. We respectfully disagree with the reading of the statute advanced in *Salas* and conclude that the plain language of the statute is inclusive rather than exclusive. We therefore agree instead with the statutory analyses set forth in *Henderson* and *Brooks*, and we apply their holdings here.

Substantial evidence supports a finding that the offenses of which both defendants were convicted resulted in the victims fearing for their subsequent safety because several of the attackers were gang members. Ruiz admitted a gang enhancement as part of his plea agreement. Esquivel did not admit a gang enhancement, and at the plea hearing the prosecution agreed it would dismiss the enhancement on the ground there was no evidence she was a gang member. Nonetheless, substantial evidence supports a finding that she aided and abetted offenses that were committed by gang members, such that her conduct in part caused the victims to fear for their safety. The trial court thereby had the statutory authority to order restitution for a home security system on the ground that the victims incurred that expense as the result of defendants' conduct.

For the reasons above, we conclude the trial court did not abuse its discretion in ordering restitution.

### B. Failure to Calculate Custody Credits for Esquivel

At sentencing, the parties stipulated that the total number of days Esquivel had served would exceed her sentence of six years eight months once custody credits were calculated to include time for good conduct. Accordingly, the trial court found Esquivel's time in custody exceeded the time she was required to serve, and the court ordered the Department of Corrections to calculate her custody credits. Esquivel contends the trial court erred by delegating the calculation of conduct credits to the Department of Corrections. The Attorney General concedes the merit of this claim, and we find the concession well-taken.

Section 2900.5 requires the sentencing court to calculate conduct credits. "It is the duty of the court imposing the sentence to determine the date or dates of any admission

8

to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section. The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213." (§ 2900.5, subd. (d).)

Accordingly, we will remand to the trial court for the limited purpose of calculating Esquivel's custody credits. As to the judgment against Ruiz, we will affirm.

### III.    DISPOSITION

As to Ruiz, the judgment is affirmed. As to Esquivel, the judgment is reversed and the matter is remanded to the trial court for the sole purpose of calculating Esquivel's custody credits.

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.


_____
Lie, J.


People v. Esquivel et al.
No. H048810