Filed 12/13/23  P. v. Williams CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>KRISTOFER MICHAEL WILLIAMS,<br><br>          Defendant and Appellant. | A166888<br><br>(Solano County Super. Ct. No. FCR341032) |

Kristofer Michael Williams was convicted by a jury of, among other offenses, the murder of Jonathan Russell.  His conviction was affirmed by this court in August 2023.  (*People v. Williams* (Aug. 17, 2023, A165264 [nonpub. opn.]).)[1]  The present appeal was filed from the trial court's restitution order, which awarded (1) $3,000 to Russell's stepmother for funeral expenses; (2) $354,000 to the mother of Russell's daughter for her loss of economic and child support plus nearly $40,000 in other expenses; and (3) approximately $45,000 to the mother of Russell's son, for her loss of child support and various other economic losses, including money spent on security cameras and a Ring camera doorbell device.

---

[1] We take judicial notice of the record on appeal filed in this court in the prior appeal, as well as of this court's unpublished opinion.  (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)

Williams's appointed appellate counsel filed a no-issues brief asking this court to independently review the record under *People v. Wende* (1979) 25 Cal.3d 436. As part of our review, we solicited supplemental briefing from the parties on whether substantial evidence supports a finding that the $470.30 for increased home security measures was incurred "as a result of the defendant's conduct" within the meaning of Penal Code[2] section 1202.4, subdivision (f) and was "related to" defendant's crime within the meaning of section 1202.4, subdivision (f)(3)(J). Having now considered that briefing, we affirm the restitution order.[3]

## BACKGROUND

Williams was convicted of murder (§ 187, subd. (a)), kidnapping (§ 207, subd. (a)), and three other felony charges. At trial, evidence established that Williams entered the home of the 9-year-old kidnapping victim, stabbed her father, and carried the child out of the house. Once outside, Williams was confronted by the child's "uncle," Russell, whom Williams stabbed before running away. Russell subsequently died from his injury. In his defense, Williams testified that before the night of the incident, he had heard rumors that the child was being molested by her dad and her "uncle." He testified

---

[2] All statutory references are to the Penal Code.

[3] We also requested briefing on whether Williams forfeited any challenge to this portion of the restitution order by failing to object in the trial court. In their supplemental briefing, the parties disputed both whether Williams asserted a sufficient objection to this portion of the restitution order and whether a challenge to the sufficiency of the evidence is subject to the forfeiture rule. In addition, Williams argued that if the error was forfeited, his attorney rendered ineffective assistance by failing to object. We do not resolve the forfeiture issue because, as discussed *post,* whether reviewed directly or via the claim for ineffective assistance of counsel, substantial evidence supports the restitution order and thus, Williams is not entitled to relief.

further that on the night of the crime he was outside of the home when he saw through a window that Russell was "standing over" the child and grabbing "his private area." He claimed that he went to the child's room in order to protect her from molestation.

Following Williams's sentencing, the prosecutor filed a motion for restitution. The prosecutor requested $3,000 for Russell's stepmother to reimburse her for funeral expenses. The prosecutor requested $354,000 for the mother of Russell's daughter as loss in economic and child support plus $300 for the cost of food provided during the funeral; $2090 in crime victim counseling costs; $35,370 in childcare costs since Russell often babysat while she was working; and $1462.50 for the cost of gas to drive to and from court during the criminal proceedings. Finally, the prosecutor requested approximately $45,500 for the mother of Russell's son, including $34,000 in child support for her son; $330.46 for funeral-related expenses; $470.30 to increase the security at her home; $10,278.34 for lost wages to attend the criminal proceedings; and $435.24 for the cost of gas to drive to and from court during the criminal proceedings.

Williams objected to the prosecution's motion and requested a hearing. Counsel indicated that Williams "object[ed] to it all"—i.e., the entire restitution award—but confined his arguments at the hearing to the child support components of the motion for restitution. After hearing the evidence and argument, the court ordered restitution for each victim in the full amount requested by the prosecution.

## DISCUSSION

The California Constitution provides that crime victims have a right to restitution when they suffer losses as a result of criminal activity. (Cal.

3

Const., art. I, § 28, subd. (b); *People v. Giordano* (2007) 42 Cal.4th 644, 652.) This constitutional mandate is implemented by section 1202.4 (*Giordano*, at pp. 654, 656), which "authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime of which the defendant was convicted." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1101.)

As noted above, after our preliminary review we concluded that the only arguable issue on appeal involved the approximately $470 awarded for home security expenses. Having considered the supplemental briefing and independently reviewed the trial court record, we find no error and affirm the order.

Subdivision (f) of section 1202.4 provides, with certain exceptions not applicable here, that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Subdivision (f)(3) of section 1202.4 adds: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (J) Expenses to install or increase residential security incurred related to . . . a violent felony, as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks."

By requiring that losses be "incurred as the result of the defendant's criminal conduct," the statute requires the victim to prove by a preponderance of the evidence a causal relationship between the claimed

4

"loss" and Williams's violent crime. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319, 1321–1322 [defendant's criminal conduct must be an actual and proximate cause of the victim's economic loss]; see also *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 [" ' "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt" ' "].) Likewise, the requirement that the security expenses be "incurred related to" the violent crime mandates proof of some nexus between the murder and the expenses. We therefore disagree with the Attorney General's suggestion that it is sufficient that the mother of Russell's son was a victim, as defined by section 1202.4, subdivision (k), of a violent crime, as defined in subdivision (c) of Section 667.5. The express language of section 1202.4 requires that the security-related expenses be incurred in relation to and as a result of the defendant's crime.

A victim seeking restitution has the burden of presenting "an adequate factual basis for the claim." (*People v. Giordano*, *supra*, 42 Cal.4th at p. 664.) "Section 1202.4 does not, by its terms, require any particular kind of proof. . . . Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove [that showing]." (*People v. Gemelli*, *supra*, 161 Cal.App.4th 1539, 1542–1543.) " ' "[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes." ' " (*People v. Foster* (1993) 14 Cal.App.4th 939, 947, superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238–245.)

"[W]e review the trial court's restitution order for abuse of discretion. [Citations.] The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] '[I]t asks in substance whether the ruling in question

"falls outside the bounds of reason" under the applicable law and the relevant facts.' " (*People v. Giordano, supra*, 42 Cal.4th at p. 663, fn. omitted.) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' " (*People v. Holmberg, supra*, 195 Cal.App.4th at p. 1320.) "In reviewing restitution orders, we do not reweigh the evidence or make credibility decisions. Our review is to determine whether there is sufficient evidence to support the inferences made by the trial court." (*People v. Baudoin* (2022) 85 Cal.App.5th 1184, 1191.) Substantial evidence includes circumstantial evidence and all reasonable inferences flowing therefrom. (See, e.g., *People v. Vang* (2001) 87 Cal.App.4th 554, 563.)

Here, the prosecutor's memorandum requested approximately $470 in restitution for home security expenses under section 1202.4, subdivision (f)(3)(J) and explained that the victim increased security at her home because "she lived in the same area as the defendant and his family members and friends." The prosecutor's letter to defendant detailing the restitution request, which was submitted to the court as an attachment to the motion, adds that the victim lives in the same city as Williams and knew of him and his friends "since they ran in similar social circles."

Had this been the *only* evidence in the record to support the security expenses, we would question its sufficiency to establish a nexus between the murder and the economic loss. Neither Russell's son nor his mother were direct victims of the crime, and it did not occur at her home. But our review of the record persuades us that Williams is incorrect to characterize the mother's motivation as "an inchoate fear of other people unrelated to appellant's crime." The pre-sentence report submitted by the probation department includes the mother's statement that the murder had "a 'horrible'

6

effect" on her son and that he "was afraid to leave home due to the circumstances of the instant offense." As noted above, Russell was murdered while trying to prevent the kidnapping of another child. In addition, the mother reported to the probation department that she had been "subjected to harassment by others, who have portrayed [Russell] as a child molester, which [is] based on the defendant's perception of the instant offense." The pre-sentence report confirms that Williams asserted his claim that he was protecting this child from Russell almost immediately upon his arrest. Finally, as the Attorney General notes, some evidence in the record also suggests that Williams associated with members of the Hell's Angels gang. From these facts, it would be reasonable to infer that the mother increased security at her home because she believed that Williams or someone acting on his behalf posed a danger to her and her son. Her decision to increase security at her home was objectively reasonable and related to the charged murder given the defense Williams asserted, the resulting harassment she suffered, and her son's fear.

Accordingly, we find no abuse of discretion.

## DISPOSITION

The restitution order is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
HIRAMOTO, J. *

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7